Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold*
Lauren Kuhlik*
Glenn E. Chappell*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW Suite 1000
Washington, DC 20036
(202) 973-0900
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*lkuhlik@tzlegal.com*
*gchappell@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Boulevard, Suite 1101
Los Angeles, CA 90024
(213) 425-3657
*apersinger@tzlegal.com*

*Counsel for Plaintiff and the Proposed Classes*
*\*pro hac vice applications forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

LAVERNE SIMMONS, on behalf of
herself and all others similarly situated,

              Plaintiffs,

      v.

BANK OF AMERICA, N.A.,

              Defendant.

Case No. 2:22-cv-01126

**CLASS ACTION COMPLAINT**

(JURY TRIAL DEMANDED)

---

**CLASS ACTION COMPLAINT**

**CLASS ACTION COMPLAINT**

Plaintiff Laverne Simmons, on behalf of herself and all persons similarly situated, alleges the following:

**INTRODUCTION**

1.      The deadly COVID-19 pandemic created the worst economic crisis since the Great Depression.[1] From the fourth quarter of 2019 through the second quarter of 2020, the U.S. economy contracted by more than 19 percent, the worst downturn ever recorded.[2] In March 2020 alone, business shutdowns and closures designed to limit the spread of the coronavirus threw more than 22 million people out of work, a mass layoff of record proportions.[3] The impacts fell disproportionately on low-income workers, with more than half of all job losses occurring in industries with low average wages.[4] In the months that followed and throughout the pandemic, households—particularly people of color—have faced significant economic hardship, including increased hunger and difficulty making rent.[5]

---

[1] *See, e.g.*, David C. Wheelock, Fed. Reserve Bank St. Louis, *Comparing the COVID-19 Recession with the Great Depression*, 39 Economic Synopses 1, 4 (2020) ("By almost any measure, the 2020 recession began with sharp declines in economic activity, employment, and equity prices that rivaled or exceeded the initial declines of the Great Depression.").

[2] Lucia Mutikani, *U.S. economy contracted 19.2% during COVID-19 pandemic recession*, Reuters (July 29, 2021), https://www.reuters.com/business/us-economy-contracted-192-during-covid-19-pandemic-recession-2021-07-29/.

[3] *Id.*

[4] Ctr. on Budget & Policy Priorities, *Tracking the COVID-19 Economy's Effects on Food, Housing, and Employment Hardships* 9 (last updated Nov. 10, 2021), https://www.cbpp.org/sites/default/files/8-13-20pov.pdf.

[5] *Tracking the COVID-19 Recession's Effects on Food, Housing, and Employment Hardships*, CENTER ON BUDGET & POLICY PRIORITIES (updated Aug. 9, 2021), *available at* https://www.cbpp.org/research/poverty-and-inequality/tracking-the-covid-19-recessions-effects-on-food-housing-and.

2.     During the pandemic, many credit card customers facing these financial difficulties were drawn into a cycle of high interest charges and late fees that further threatened their well-being.

3.     For example, if a customer does not make a credit card payment by the due date set by Defendant Bank of America, N.A. ("BANA"), or pays below the minimum payment required by BANA, BANA charges late fees of up to $40 plus interest on any balance—including interest on those late fees.

4.     Through the imposition of these and other fees and penalties, BANA makes billions of dollars. BANA's profits remained high throughout the global pandemic, due in no small part to these punitive late fees. In 2020 alone, BANA had a revenue of $33.3 billion in its consumer market, including $7 billion in service charges.[6] BANA earned $1.7 *billion* in non-interchange credit card fees in 2020, including $407 million such fees in just the last quarter of 2020, such as late fees.[7]

5.     In its contract of adhesion with its customers, BANA has discretion to require customers to pay their minimum payment balance by a date certain, or to allow customers to omit a payment or make a reduced payment during a federally-declared disaster. In order to obtain good publicity and thereby attract more business and investors, as well as ensure that current customers did not move to a friendly credit card company, BANA promised consumers that it would refund punitive late fees and interest that hurt its most vulnerable customers during the pandemic.

---

[6] Bank of America Annual Report 2020 4, 51, *available at* https://d1io3yog0oux5.cloudfront.net/_99e328ac189326b79fa0a994ba998a52/bankofamerica/db/867/9129/annual_report/BAC_2020_Annual_Report.pdf.

[7] *See* Bank of America Supplemental Information: Fourth Quarter 2020 4, *available at* https://d1io3yog0oux5.cloudfront.net/_99e328ac189326b79fa0a994ba998a52/bankofamerica/db/806/9028/supplemental_information/4Q20+Supplemental+Information.pdf.

6.     BANA did not keep its promises. While hundreds of thousands of consumers lost their jobs and went hungry, BANA reaped enormous profits. In addition to collecting billions of dollars from its most vulnerable consumers, BANA collected federal hand-outs. While earning up to $767 million from administering Paycheck Protection Program loans,[8] BANA also benefitted from Federal Reserve overdraft penalty waivers.

7.     In an apparent bid at positive public relations, BANA told customers that they could "request to defer payments," and receive "refunds on late fees."[9] BANA also announced that it would "offer assistance to qualifying consumer . . . clients facing hardships, including forbearance with certain fees."[10]

8.     Moreover, BANA's Credit Card Agreement makes the bank's imposition of late fees discretionary—mandating that BANA exercise that discretion to the benefit of its customers, as opposed to its own interests, under its duty of good faith and fair dealing.

9.     Notwithstanding these representations and contractual duties, BANA never took the steps necessary to adhere to its promises and representations. Instead, it rejected requests from its customers (including Ms. Simmons) for late fee refunds, and never implemented any system to make good on its promises.

---

[8] Stacy Cowley, *Despite Billions in Fees, Banks Predict Meager Profits on P.P.P. Loans*, NY TIMES (Oct 1, 2020), *available at* https://www.nytimes.com/2020/10/01/business/ppp-loans-bank-profits.html.

[9] Press Release, Bank of America, N.A., Bank of America Announces Additional Support for Consumer and Small Business Clients Experiencing Hardship From the Impact of the Coronavirus (Mar. 19, 2020), *available at* https://newsroom.bankofamerica.com/press-releases/consumer-banking/bank-america-announces-additional-support-consumer-and-small.

[10] Kelly Anne Smith & Daphne Foreman, *List of Banks Offering Relief to Customers Affected by Coronavirus (COVID-19)*, FORBES (Apr. 3, 2020), *available at* https://www.forbes.com/sites/advisor/2020/04/03/list-of-banks-offering-relief-to-customers-affected-by-coronavirus-covid-19/?sh=4ca551ea4efa.

4

**CLASS ACTION COMPLAINT**

10.     Ms. Simmons maintained a personal credit card with BANA. She experienced financial hardship during the pandemic that depleted her funds and caused her to incur numerous late fees—exactly the types of fees that BANA promised to waive or refund.

11.     But BANA failed to waive or refund these fees, despite repeated requests from Ms. Simmons. BANA told Ms. Simmons that there was no COVID-specific relief program, despite BANA's widely publicized public promises to waive such fees for struggling customers.

12.     In fact, upon information and belief, BANA maintained its pre-COVID policy of allowing only a very limited number of fee refunds, and refusing even to consider refunding any further fees, regardless of the customer's circumstances.

13.     Numerous other customers were not even able to get through to BANA. In response to an online post by BANA about its purported COVID-19 resources, many people made the same complaints: hold times were long, nobody answered the phone, and when someone did answer, calls would be disconnected.[11] Despite promising to refund fees during COVID-19, BANA did not even set up a system that would adequately allow its customers to request these promised refunds.

14.     And, as Ms. Simmons' experiences confirm, customers who were able to get through were denied the fee refunds that BANA promised.  Even when BANA did grant refunds, it was under its non-discretionary, pre-COVID policies, meaning that the bank was not exercising discretion at all with regard to COVID-

---

[11] Bank of America, N.A. Facebook Page (Mar. 13, 2020), *available at* https://www.facebook.com/BankofAmerica/posts/2800050740049144.

**CLASS ACTION COMPLAINT**

related requests, despite the language of the contract and the promises it made to customers to consider those requests and grant refunds.

15.    These promises generated significant good press for BANA,[12] at a time when people began to question whether, given bank profits and the financial strain of bank fees on the most vulnerable among us, banks should even be allowed to charge punishing fees on their poorest customers.[13] Indeed, the Federal Reserve recommended that banks waive late fees and allow customers to defer or skip payments.[14]

16.    Black and Hispanic customers are especially hard-hit, since they have disproportionately borne the brunt of the COVID-19 pandemic, including higher infection and death rates than whites, they have been likelier to lose their jobs and have lower income, and they are most likely to get hit with overdraft and other fees.[15]

17.    However, BANA refused to even consider many of the fee refund requests it had solicited. It thus misled its customers—as well as potential

---

[12] *See, e.g.*, Elizabeth Gravier, *Bank of America Waives Fees, Defers Payments on Credit Cards, Some Mortgages and Auto Loans During Coronavirus*, CNBC (Aug. 30, 2020), *available at* https://www.cnbc.com/select/bank-of-america-coronavirus-assistance/; *BOA Offering Refunds on Fes, Loan Deferrals*, PAYMENTS DIVE (Apr. 10, 2020), *available at* https://www.paymentsdive.com/ex/mpt/news/boa-offering-refunds-on-fees-loan-deferrals/ (hereinafter, Gravier, *Bank of America Waives Fees*).

[13] Chicago Sun Times Editorial Board, *Abolish Bank Overdraft Fees That Prey on People Who Can Least Afford Them*, CHICAGO SUN TIMES (June 3, 2021), *available at* https://chicago.suntimes.com/2021/6/3/22507650/overdraft-fees-ally-financial-elizabeth-warren-editorial.

[14] *See* Letter to the Officer in Charge of Supervision at Each Federal Reserve Bank and to Institutions Supervised by the Federal Reserve (Mar. 13, 2020), *available at* https://www.federalreserve.gov/supervisionreg/srletters/SR2004.htm (referencing recommendations in *Supervisory Practices Regarding Banking Organizations and Their Borrowers and Other Customers Affected by a Major Disaster or Emergency* (Mar. 29, 2013)).

[15] *Id.*

---

**CLASS ACTION COMPLAINT**

customers—and exercised its discretion solely in its own favor, without taking into consideration the circumstances of an unprecedented global pandemic and corresponding economic disaster and the financial benefits it received from the federal government as well as the promises it had made to its customers.

18. Ms. Simmons brings this action on behalf of herself and a class of all similarly situated consumers against BANA. She challenges (1) BANA's systematic violation of its covenant of good faith and fair dealing, flowing from BANA's failure to consider requests for refunds of late fees, despite reserving the discretion to charge or not charge these fees and despite promising customers that it would exercise its discretion in *their* favor during the deadly COVID-19 pandemic; (2) BANA's unjust enrichment through its knowing retention of the benefit of late fees, despite its promise to refund those fees to consumers; and (3) BANA's violation of California's unfair trade practices laws by misrepresenting that it would refund late fees levied during the COVID-19 pandemic.

19. It is a breach of the covenant of good faith and fair dealing for BANA to (1) provide itself discretion as to whether to charge or waive late fees; (2) promise customers that it would waive such fees; (3) refuse to take into consideration the circumstances of a global pandemic and worst economy since the Great Depression, the money that was provided to it by the federal government, and the harm these fees would impose on vulnerable customers when determining not to exercise discretion in customers' favor; and (4) either fail to exercise discretion at all by failing to setup a system for considering the financial hardship of customers who request a waiver of those fees or consistently exercise its discretion in its own favor. These actions deny BANA's most vulnerable customers the full benefit of the contract that BANA itself wrote.

20. It is likewise a violation of the California Unfair Competition Law, California Business and Professions Code section 17200, *et seq.*, to deceive

**CLASS ACTION COMPLAINT**

customers by promising to refund late fees, and then systematically refuse to do so. These false promises are misrepresentations that are likely to mislead the public as to whether late fees will be refunded during the COVID-19 pandemic. Ms. Simmons relied on and suffered financial harm from these promises because she would have taken action to avoid these punitive fees had she known that BANA was going to refuse to refund these fees, during this time of extraordinary financial hardship.

21.    BANA also unjustly enriched itself at the expense of its customers by retaining the benefit of late fees, despite its promise to refund those fees to struggling customers.

22.    Ms. Simmons and other Class members have been injured by BANA's improper practices. On behalf of herself and the Class, Ms. Simmons seeks damages, restitution, and injunctive relief for BANA's violation of the covenant of good faith and fair dealing and for the violation of the California Unfair Competition Law, and disgorgement of the wrongful and inequitable proceeds received by BANA due to its unjust practices.

## JURISDICTION AND VENUE

23.    This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than BANA.

24.    This Court has jurisdiction over BANA because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in this State.

**CLASS ACTION COMPLAINT**

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BANA is subject to personal jurisdiction here and regularly conducts business in the District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**PARTIES**

26.     Plaintiff Laverne Simmons is of majority age and a citizen and resident of Inglewood, California. Ms. Simmons maintained a personal credit card with BANA until December 2020, and continued to incur late fees on her BANA credit card until at least July 2021.

27.     Defendant Bank of America, N.A. is a national bank with its headquarters and principal place of business in Charlotte, NC. Among other things, BANA is engaged in the business of providing retail banking services to consumers. BANA operates banking centers, and thus conducts business, throughout the State of California, including within this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

28.     When a BANA credit card customer makes a payment below the minimum payment balance set by BANA, or fails to make the payment by the due date set by BANA, BANA retains the discretion to charge a late fee of up to $40.

29.     This fee and how and when it is to be charged are discussed in BANA's contract of adhesion with customers.

30.     In that adhesion contract, BANA reserves itself the discretion to charge or waive late fees.

31.     In representing to customers that it would provide certain relief, including refunds for late fees, BANA promised to exercise its discretion in favor of its most vulnerable customers who had suffered financial difficulty during the COVID-19 pandemic.

32.     Nevertheless, BANA failed even to set up a system that would allow customers to request pandemic-related late fee refunds and customer service representatives to issue such refunds.

33.     Its failure to do so, instead exercising its discretion to its own benefit to collect astronomical profits from late fees while its most vulnerable customers suffered, violated the duty of good faith and fair dealing that inheres in every contract.

34.     This refusal to abide by its own promise also misled customers and tended to mislead the public.

## I.    BANA PROMISES TO EXERCISE ITS DISCRETION FAIRLY

### A.    BANA's Promises to Customers Impacted by COVID-19

35.     Regulators and the public alike called for banks to put a stop to predatory late fees during the pandemic. For example, in the midst of the pandemic, a November 2020 United States Federal Reserve study reported that, "[a]s millions of Americans experienced a sudden loss of income, consumers increasingly relied on sources of short-term liquidity, such as savings and credit cards" to make ends meet.[16] And, the study found, in the early days of the pandemic, consumers who "recently experienced a loss of income and [were] under financial stress" complained frequently about "late fees for credit cards."[17] Indeed, consumers complained about these credit cards more often than any other financial product in May, June, and July 2020.[18]

---

[16] Bd. of Governors, U.S. Fed. Reserve Sys., *The Pandemic's Early Effects on Consumers and Communities*, 2 Consumer & Community Context 18 (Nov. 2020), https://www.federalreserve.gov/publications/files/consumer-community-context-20201118.pdf.

[17] *Id.* at 19.

[18] *Id.* at 17 (Fig. 1).

36.    Federal regulators also pushed banks to help their customers. On March 13, 2020, the Office of the Controller of the Currency issued guidance encouraging banks to "take steps to meet the financial services needs of customers adversely affected by COVID-19-related issues," and specifically asked that they waive late payment fees on credit cards.[19] The guidance explained that such relief measures "serve the long-term interests of communities and the financial system" and "are consistent with safe and sound banking practices and applicable laws."[20]

37.    State officials also asked banks to provide relief from these fees. For example, in March 2020, New York's governor issued an executive order instructing the state's Department of Financial Services to require state-chartered banks to waive late fees and other credit card fees to help lessen the financial hardship of the pandemic on New Yorkers.[21] That same month, the Secretary of California's Business, Consumer Services & Housing Agency and its Commissioner of Business Oversight jointly issued guidance to financial institutions in the state whose customers "may be suffering from loss of income or other financial hardship as a result of the COVID-19 pandemic."[22] They specifically encouraged banks to waive payment fees on credit cards during the

_____

[19] U.S. Office of the Controller of the Currency, OCC Bulletin 2020-15, Pandemic Planning: Working With Customers Affected by Coronavirus and Regulatory Assistance    (Mar.    13,    2020),    https://www.occ.gov/news-issuances/bulletins/2020/bulletin-2020-15.html.
[20] *Id.*
[21] Press Release, N.Y. Dep't Fin. Servs., Governor Cuomo Signs Executive Order Mandating Businesses That Require In-Office Personnel to Decrease In-Office Workforce    by    75    Percent    (Mar.    19,    2020), https://www.dfs.ny.gov/reports_and_publications/press_releases/pr20203191.
[22] Lourdes Castro Ramirez, Sec'y, Cal. Bus., Consumer Servs. & Housing Agency & Manuel P. Alvarez, Comm'r, Cal. Bus. Oversight, *Guidance to Financial Institutions During    the    COVID-19    Pandemic*    1    (Mar.    22,    2020), https://www.bcsh.ca.gov/coronavirus19/dbo_banks.pdf.

**11**
**CLASS ACTION COMPLAINT**

state of emergency.[23] And also that same month, the Illinois Department of Financial and Professional Regulation "strongly urge[d] banks and credit unions to respond to borrowers affected by the current economic environment" by waiving fees for "late payments on credit cards."[24]

38.    In light of this ongoing public pressure and the threat of legislative action, BANA promised that it would help its most vulnerable customers, including by waiving late fees.

39.    On March 19, 2020, BANA announced on its website that it is "offering assistance to clients through its Client Assistance Program," that it would work with them "on a case-by-case basis," and that credit card holders could "request to defer payments, refunds on late fees."

40.    In that same timeframe, BANA also told customers on its website: "Need assistance with your payments? We can help now. . . . Through our Client Assistance Program, consumers and small business clients who need assistance making credit card and loan payments can submit an online request . . . When you request a payment deferral there will be no negative credit bureau reporting for up-to-date clients." This representation remained on BANA's website through at least June 17, 2020.

41.    On March 12, 2020, BANA reported to Forbes that it "offer[ed] assistance to qualifying consumer and small business clients facing hardships, including forbearance with certain fees." On March 24, 2020, its head of consumer,

---

[23] *Id.* at 2.

[24] Press Release, Ill. Dep't Fin. & Prof'l Regulation, Illinois Department of Financial and Professional Regulation Announces Help for Consumers Struggling to Make Payments on their Debts Due to the COVID-19 Crisis and Guidance for its Regulated Financial Sectors 1 (Mar. 30, 2020), https://www.idfpr.com/News/2020/2020%2003%2030%20IDFPR%20financial%20guidance.pdf.

**CLASS ACTION COMPLAINT**

small business, and wealth management client care told CNBC: "Our teams are ready to help clients and small businesses, and we are especially focused on the needs of those experiencing hardship due to the current situation. . . . If you have been negatively impacted by coronavirus and need additional assistance related to your account please visit our website or you can give us a call."[25]

42.     Taken together, these representations indicate that BANA promised customers that it would refund late fees that it had issued during the pandemic.

43.     Because BANA failed to refund fees upon request and did not set up a system that would allow customer service representatives to do so, these promises deceived reasonable customers into believing that they could get their late fees refunded during the COVID-19 pandemic.

**B.     BANA's Relevant Contracts**

44.     Transactions involving credit card accounts at BANA are governed by BANA's Credit Card Agreement.

45.     According to the Credit Card Agreement that was in effect at the start of the pandemic, BANA promises to exercise discretion on whether to charge late fees, and the amount of such fees, including promising to waive fees during global crises:

> Late Payment Fee: Up to $39
>
>                 * * *
>
> We may allow you, from time to time, to omit a monthly payment or make a reduced payment. We will notify you when these options are available. This will only occur on an isolated basis, such as **when the bank is working with borrowers affected by a federally declared disaster**.

(emphases added).

_____

[25] Gravier, *Bank of America Waives Fees, supra*.

**13**
**CLASS ACTION COMPLAINT**

46.     Similarly, the version of BANA's Credit Card Agreement that went into effect on December 31, 2021, and remains in effect, uses identical language, except that it retains discretion to charge late fees of up to $40 instead of $39.

47.     Consistent with BANA's representations in its contracts, on its website, and elsewhere, Ms. Simmons and reasonable consumers understand that BANA has discretion over whether to charge, refund, or waive late fees. They further understand that BANA agreed to exercise its discretion fairly, particularly that this discretion would not be exercised solely to the detriment of its most vulnerable customers, especially during the COVID-19 pandemic.

48.     The contracts, together with the website promises, indicate that BANA will exercise its discretion in favor of *customers*, not itself.

## II.     BANA FAILED TO ABIDE BY ITS PROMISES TO REFUND PLAINTIFF'S LATE FEES

### A.     Ms. Simmons' Experiences

49.     Ms. Simmons is a mobile notary and owns a rental property. Prior to the COVID-19 pandemic, she had rarely, if ever, incurred a credit card late fee.

50.     During the pandemic, however, work dried up and her hours fell, which made it difficult for her to keep up with her bills. Additionally, her tenant was also not able to pay rent due to the COVID-19 pandemic, so Ms. Simmons had very little income and no way to earn what she needed to cover her bills.

51.     In April 2020, Ms. Simmons began incurring late fees on her BANA credit card due to the impact of COVID-19 on her finances. BANA charged her numerous late fees throughout 2020, and eventually closed her account in December 2020.

52.     In 2020, Ms. Simmons saw reports that large banks, including BANA, were promising relief from fees to customers suffering from financial hardship. This influenced the way she used her credit card. Had she understood that BANA

1    was not actually offering the promised refunds, she would have used a different

2    credit card that may have been more likely to waive, refund, or discount late fees.

3        53.    In April 2020, Ms. Simmons called BANA to request the assistance

4    that she understood BANA was promising. The customer service representative

5    allowed her to temporarily defer her payment, but told her that this deferral was a

6    one-time program and was their standard hardship program, not related to the

7    COVID-19 pandemic.

8        54.    As the pandemic continued, Ms. Simmons continued to have problems

9    making payments due to the impact of COVID-19 on her finances. She called

10   BANA throughout 2020 and 2021, requesting COVID-related relief due to her

11   financial situation as caused by the pandemic. After the one-time deferral around

12   April 2020, the BANA customer service representatives all informed Ms. Simmons

13   that they had no COVID-related relief, and that she was only entitled to the

14   standard one-time deferral that had existed since prior to the pandemic. BANA did

15   not refund any late fees or allow Ms. Simmons to defer any payments after the one-

16   time deferral period ended around June or July 2020.

17       55.    The statements by the BANA representatives clearly indicated that

18   BANA had no process or program for considering or granting relief for its financial

19   customers' hardships during the pandemic, despite the explicit promises BANA

20   had made.

21       56.    Despite closing her account, BANA continued to charge Ms. Simmons

22   late fees well into 2021. Although Ms. Simmons made no new purchases in 2021,

23   BANA charged her a late fee in February, March, April, May (despite accepting a

24   payment below the minimum payment amount for that pay cycle), and June of

25   2021. BANA charged her a total of $223 in late fees solely during the first six

26   months of 2021. Upon information and belief, none of those fees were ever

27   refunded.

28

**15**

**CLASS ACTION COMPLAINT**

57.    Ms. Simmons worked with a tight budget each month during the pandemic because of its effects on her work hours. She never intentionally was delinquent on her credit card bills, but the money coming in simply wasn't enough to cover her bills. Had she known that BANA did not intend to keep its promises to use its discretion to grant customers relief from late fees during the pandemic, she would have used other credit cards to pay bills. But because of BANA's promises to help, she did not believe that looking to these other companies, and any risk of incurring their fees, was necessary.

## CLASS ALLEGATIONS

58.    Ms. Simmons brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

59.    The proposed classes are defined as:

> **Nationwide class:** All BANA consumer credit card customers in the United States who, after March 12, 2020, were charged late fees by BANA after BANA promised to consider waiving such fees due to the pandemic, attempted to seek a refund, and did not receive a refund for such fees.

> **Alternative California-only class:** All BANA consumer credit card customers in California who, after March 12, 2020, were charged late fees by BANA after BANA promised to consider waiving such fees due to the pandemic, attempted to seek a refund, and did not receive a refund for such fees.

The National Class and California Class are collectively referred to herein as the "Classes."

60.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

**CLASS ACTION COMPLAINT**

61.    Excluded from the Classes are BANA, its parents, subsidiaries, affiliates, officers and directors, any entity in which BANA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

62.    The members of the Classes are so numerous that joinder is impractical. Each Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to BANA's records.

63.    Ms. Simmons' claims are typical of the claims of those of the Classes she seeks to represent in that she, like all Class members, was denied the benefit of her contract with BANA when it promised to exercise its discretion to refund or waive late fees in favor of its customers during the COVID-19 pandemic, and then refused to even consider requests for waiver or refunds. Ms. Simmons, like all Class members, has been damaged by BANA's misconduct in that she has been denied the benefit of her contract with BANA through the unfair imposition of late fees, to BANA's extremely profitable benefit, despite BANA's promise to exercise discretion in the choice to refund or waive such fees. Her claims are also typical of the Classes she seeks to represent in that BANA made misrepresentations to her in promising to refund late fees and then systematically refusing to do so. Ms. Simmons, like all Class members, has been harmed by these wrongful business practices. Furthermore, the factual basis of BANA's misconduct is common to all Class members and represents a common thread of refusal to exercise its discretion fairly, resulting in injury to all members of the Classes.

64.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

65.    Among the questions of law and fact common to the Classes are:

**17**
**CLASS ACTION COMPLAINT**

a.    Whether BANA breached its covenant of good faith and fair dealing with Plaintiff and other members of the Classes through its late fee policies and practices;

b.    Whether BANA unjustly enriched itself through its late fee policies and practices;

c.    Whether BANA violated the California Unfair Competition Law through its fraudulent misrepresentations;

d.    The proper method or methods by which to measure damages; and

e.    Whether the Classes are entitled to declaratory and injunctive relief.

66.    Ms. Simmons' claims are typical of the claims of other Class members, in that they arise out of the same wrongful BANA late fee policies and practices, and concern BANA's form Credit Card Agreement and other related documents, as well as BANA's promises to customers and to the public. Ms. Simmons has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

67.    Ms. Simmons is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Ms. Simmons is an adequate representative and will fairly and adequately protect the interests of the Classes.

68.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BANA, few Class members could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class

**CLASS ACTION COMPLAINT**

members will continue to suffer losses and BANA's misconduct will proceed without remedy.

69.    Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

70.    Ms. Simmons knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## COUNT I
### Breach of the Covenant of Good Faith and Fair Dealing
#### (On Behalf Plaintiff and all Classes)

71.    Ms. Simmons repeats paragraphs 1 through 70 above.

72.    Ms. Simmons and BANA have contracted for credit card services, as embodied in BANA's Credit Card Agreement and related documentation.

73.    Under the laws of California and the states in which BANA does business, good faith is an element of every contract pertaining to the assessment of late fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the

spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

74.    A party to a contract violates the obligation of good faith in performance by exercising discretion reserved to it solely in its own favor, and contrary to the benefit of the other party or otherwise exercising it in bad faith. Doing so exploits the discretion to their benefit, particularly when, as here, the party exercising the discretion drafted the contract—thus reserving the discretion to itself—and exercises that discretion consistently against the benefit of a less powerful, less sophisticated consumer.

75.    BANA has breached the covenant of good faith and fair dealing in the Credit Card Agreement through its late fee policies and practices as alleged herein, because it failed to exercise the discretion it retained for itself in its contracts of adhesion to the benefit of its customers.

76.    BANA's Credit Card Agreement states that BANA "may allow [customers], from time to time, to omit a monthly payment or make a reduced payment[,]" particularly when "the bank is working with borrowers affected by a federally declared disaster." This provision gives BANA discretion to assess or waive late fees.

77.    Rather than use this discretion to provide relief to customers suffering from financial hardship during the pandemic as promised, BANA instead exercised its discretion in its own favor. In doing so, BANA has unfairly interfered with Ms. Simmons' and the Classes' right to receive the benefits of the contract.

78.    Ms. Simmons and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Credit Card Agreement.

79.    Ms. Simmons and members of the Classes have sustained damages from BANA's breach of the covenant of good faith and fair dealing.

**CLASS ACTION COMPLAINT**

## COUNT II
### <u>Unjust Enrichment</u>
**(On Behalf of Plaintiff and all Classes)**

80.     Ms. Simmons pleads this claim in the alternative. Ms. Simmons repeats paragraphs 1 through 79 above.

81.     Ms. Simmons, on behalf of herself and the Classes, asserts a common law claim for unjust enrichment.

82.     By means of BANA's wrongful conduct alleged herein, BANA knowingly provided credit card services to Ms. Simmons and members of the Classes that were unfair, unconscionable, and oppressive.

83.     BANA knowingly received and retained wrongful benefits and funds from Ms. Simmons and members of the Classes in the form of late fees and related interest. In so doing, BANA acted with conscious disregard for the rights of Ms. Simmons and members of the Classes.

84.     As a result of BANA's wrongful conduct as alleged herein, BANA has been unjustly enriched at the expense of, and to the detriment of, Ms. Simmons and members of the Classes.

85.     BANA's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

86.     Under the common law doctrine of unjust enrichment, it is inequitable for BANA to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of late fees on Ms. Simmons and members of the Classes in an unfair, unconscionable, and oppressive manner. BANA's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

87.     The financial benefits derived by BANA rightfully belong to Ms. Simmons and members of the Classes. BANA should be compelled to disgorge in a common fund for the benefit of Ms. Simmons and members of the Classes all

wrongful or inequitable proceeds received by it. A constructive trust should be imposed upon all wrongful or inequitable sums received by BANA traceable to Ms. Simmons and the members of the Classes.

88.    Ms. Simmons and members of the Classes have no adequate remedy at law.

## COUNT III

### California Unfair Competition Law Business and Professions Code § 17200
**(On Behalf of Plaintiff and the California Class)**

89.    Ms. Simmons repeats paragraphs 1 through 88 above.

90.    BANA's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq.*

91.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

92.    By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable and sweeps within its scope acts and practices not specifically proscribed by any other law.

93.    Ms. Simmons and the California Class bring this claim under the third prong, that of "fraudulent business act or practice."

94.    BANA committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, when affirmatively and knowingly misrepresenting that it would refund late fees incurred due to the COVID-19 pandemic. Such representations are likely to mislead the public.

**CLASS ACTION COMPLAINT**

95.   As a direct and proximate result of BANA's violations of the UCL's "deceptive" prong, Ms. Simmons and members of the California Class have been, and will continue to be charged excessive late fees, and thereby have suffered and will continue to suffer actual damages.

96.   Ms. Simmons and the California Class request equitable relief to restore to them all money acquired by means of BANA's unlawful conduct, an injunction on behalf of the general public to prevent BANA from continuing to misrepresent its fee and waiver practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Simmons and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.   Granting an injunction requiring BANA to disclose the actual circumstances, if any, under which pandemic-related refunds will be provided to its customers;

2.   Granting an injunction requiring BANA to set up a system that will allow the issuance of refunds when a fee was incurred due to circumstances related to the COVID-19 pandemic or any other injunctive relief that the Court finds proper;

3.   Restitution of all late fees paid to BANA by Ms. Simmons and members of the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

4.   Disgorgement of the ill-gotten gains derived by BANA from its misconduct;

5.   Actual damages in an amount according to proof;

6.   Pre-judgment interest at the maximum rate permitted by applicable law;

7.   Treble damages and attorneys' fees as provided by law;

**23**

8.      Costs and disbursements assessed by Ms. Simmons in connection with this action; and

9.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Simmons and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: February 18, 2022                    Respectfully submitted,

Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold*
Lauren Kuhlik*
Glenn E. Chappell*
**TYCKO & ZAVAREEI LLP**
1828 L Street NW Suite 1000
Washington, DC 20036
(202) 973-0900
*hzavareei@tzlegal.com*
*agold@tzlegal.com*
*lkuhlik@tzlegal.com*
*gchappell@tzlegal.com*

Annick M. Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Boulevard, Suite 1101
Los Angeles, CA 90024
(213) 425-3657
*apersinger@tzlegal.com*

*Attorneys for Plaintiff and the Proposed Classes*
*\*pro hac vice application forthcoming*

**CLASS ACTION COMPLAINT**